

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| GLORIA J. BATES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:05-CV-0269 |
| | § | |
| MICHAEL J. ASTRUE,[1] | § | |
| Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

## REPORT AND RECOMMENDATION TO AFFIRM
## THE DECISION OF THE COMMISSIONER

Plaintiff GLORIA J. BATES brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision by the defendant, MICHAEL J. ASTRUE (Commissioner), Commissioner of Social Security, denying plaintiff's application for disability insurance benefits and supplemental security income (SSI) benefits. Both parties have filed briefs in this cause. For the reasons hereinafter expressed, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding the plaintiff not disabled and not entitled to benefits be AFFIRMED.

### I.
### THE RECORD

On July 21, 2003, plaintiff applied for disability insurance benefits, (Transcript [hereafter Tr.] 69), and on July 22, 2003, plaintiff applied for SSI benefits. (Tr. 371). In her applications, plaintiff alleges she has been unable to work since March 1, 2003 due to fibromyalgia,

---

[1]On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted as the defendant in this suit.

depression, and a back condition. (Tr. 69, 79, 371). The Social Security Administration denied benefits initially and upon reconsideration.

An administrative hearing was held before Administrative Law Judge (ALJ) Larry Johnson on November 15, 2004. (Tr. 18, 32-48). Plaintiff, who was represented by counsel, testified at the hearing. (Tr. 36-47). On February 25, 2005, the ALJ rendered an unfavorable decision, finding plaintiff not disabled at Step 5 of the five-step sequential analysis and, therefore, not entitled to disability benefits. (Tr. 19). At the time of the administrative hearing, plaintiff was 44 years old with a high school education and past relevant work experience as a housekeeper and a home health aide. (Tr. 20, 24).

In his decision, the ALJ found that plaintiff had not engaged in any substantial gainful activity since her alleged onset date and that plaintiff suffered from rheumatoid arthritis, an impairment that was severe. (Tr. 19). However, the ALJ found that plaintiff's impairment did not meet or equal one of the listings found in Appendix 1, Subpart P, Regulations No. 4, and therefore, plaintiff was not entitled to a presumptive finding of disability. (Tr. 20). After recounting plaintiff's hearing testimony and reviewing the medical records, the ALJ found that plaintiff did not retain the ability to perform her past relevant work. (Tr. 23). The ALJ based this finding on his assessing plaintiff as retaining a residual functional capacity (RFC) for sedentary work. (Tr. 22). Utilizing the Medical-Vocational Guidelines (also known as the "Grids"), located in Part 404, Subpart P, Appendix 2 of the Regulations, the ALJ found that a ruling of "not disabled" was directed, given plaintiff's age, education, and RFC for sedentary work. (Tr. 23). Plaintiff requested review of the ALJ's decision and on August 19, 2005, the Appeals Council issued its order denying plaintiff's request for review. (Tr. 6-8). Consequently,

the determination of the ALJ became the final decision of the Commissioner.

## II.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). Substantial evidence is "such relevant evidence as a responsible mind might accept to support a conclusion. It is more than a mere scintilla and less than a preponderance." *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)).

If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices" or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ <u>could</u> have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case

comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision.

## III.
## ISSUES

This Court is limited to reviewing only whether there was substantial evidence in the record as a whole to support the ALJ decision and whether proper legal standards were applied. By her appeal, plaintiff raises the following issues:

1. Whether the hearing tape was so inaudible as to require remand for production of an audible hearing tape; and,

2. Whether substantial evidence existed to support the ALJ's decision.

## IV.
## MERITS

### A.
### The Hearing Tape

In her first point of error, plaintiff alleges her case should be remanded for purposes of obtaining an audible hearing tape. Plaintiff bases this allegation on the presence of at least forty "inaudible" notations entered by the transcriber on the hearing transcript. (Plaintiff's Brief at 4). Plaintiff is correct that an inaudible hearing tape can be the basis of a remand. *See, e.g., Randall v. Sullivan*, 956 F.2d 105 (5th Cir. 1992); *Clifton v. Heckler*, 755 F.2d 1138 (5th Cir. 1985). The critical consideration is whether the deficiencies prohibit meaningful judicial review. In this case, however, the ALJ heard plaintiff's testimony during the administrative hearing, and set out, in the administrative decision, the critical parts of plaintiff's testimony. Plaintiff has not shown the recitation and summarization of his testimony by the ALJ was flawed, nor has plaintiff identified any prejudice from the untranscribed testimony. Furthermore, a review of the

transcript demonstrates that the inaudible statements (1) occurred between the ALJ and plaintiff's counsel before testimony began in the hearing; (2) are understandable in context, *i.e.*, the missing statement's content can be gleaned from the context; or, (3) relate to matters that are contained in the medical records.

For example, before the hearing began, the following exchange occurred:

> ALJ: Okay. That'll be fine. Do we have hearings with you in the morning?
>
> ATTY: Yes.
>
> ALJ: Did we divide you up intentionally? I mean, was this something — you wanted this way or —
>
> ATTY: I didn't do it. I guess [INAUDIBLE].
>
> ALJ: Because I ask them to bunch them unless the rep specifies otherwise.
>
> ATTY: Unless I already—well, I didn't have any scheduled. There's four today and I think there's three or four tomorrow. I don't know. I don't have much to do with it, my secretary schedules me.
>
> ALJ: Oh.
>
> ATTY: So maybe she decided I didn't need to be bunched up.
>
> ALJ: All right. Well — no, I just — if somebody wants to do a whole day, I'll do it that way.
>
> ATTY: Half a day is fine with me. It starts getting weary after a while. [INAUDIBLE].

(Tr. 34-35). Clearly, this exchange does not relate to plaintiff's case; thus, the inaudibles are insignificant. Furthermore, the inaudibles contained in plaintiff's hearing testimony do not necessitate remand. For example, the following exchange occurred while the ALJ was

questioning plaintiff:

> Q: Now are those — are you having any problem with, say, any joint deformities or any continual swelling problems in any joints?
>
> A: [INAUDIBLE]
>
> Q: You don't have any fingers go off the wrong direction or —
>
> A: No.
>
> Q: — anything like that.
>
> A: No.
>
> Q: What do you do with your time most of the day?
>
> A: Well, I was doing, you know — when I'm not in a lot of pain, I try to just, you know [INAUDIBLE]. I read. I used to do puzzles.
>
> Q: Fair to say that the degree of pain kind of determines what you do for the day?
>
> A: [No audible response].
>
> Q: Do you have a driver's license?
>
> A: No.
>
> Q: You mentioned your back. Explain to me what the problem is with your back.
>
> A: [INAUDIBLE] lower back pain [INAUDIBLE].
>
> Q: Does the pain seem to travel any place or radiate any place?
>
> A: It's just mostly in there.
>
> Q: Just in the back?

>       A:      My knees and [INAUDIBLE].
>
>       Q:      But you don't have any shooting pain down the legs or anything like that from the back?
>
>       A:      Every once in a while, not often.

(Tr. 41-42). Although there are five inaudible notations and one "no audible response" notation in this particular excerpt of plaintiff's testimony, this excerpt illustrates the futility of remanding this case in order to produce a clearer tape. The missing testimony does not create prejudice necessitating remand. Therefore, in light of the transcript and the record as a whole, remand is not necessary to produce a new hearing tape.

## B.
## Substantial Evidence

In her second point of error, plaintiff alleges there is not substantial evidence in the record to support the ALJ's determination. Specifically, plaintiff alleges the ALJ's RFC determination is without the support of substantial evidence because he failed to properly credit Dr. Constantine Saadeh's RFC evaluation.[2] (Plaintiff's Brief at 6).

At the ALJ hearing level, the ALJ bears the responsibility for determining a claimant's RFC. 20 C.F.R. § 404.1546(c). In making the RFC determination, the ALJ must consider all of the relevant evidence of record, including subjective evidence of a claimant's limitations. 20 C.F.R. § 404.1545(a)(3). Furthermore, the ALJ must weigh all of the opinion evidence. 20 C.F.R. §§ 404.1527(d), 416.927(d). Generally, a treating physician's medical opinion is entitled

---

[2] Plaintiff also seems to allege that the ALJ failed to properly credit all of plaintiff's impairments. However, this assertion is without merit because the majority of ailments plaintiff's counsel cites to in his brief were never alleged as severe impairments, and, in fact, many occurred more than five years before plaintiff ever alleged a disability. Therefore, such impairments were not relevant to plaintiff's disability application.

to controlling weight.[3] *Id.*; *see also Newton v. Apfel*, 209 F.3d 448, 453 (5th Cir. 2000).
"[A]bsent reliable medical evidence from a treating or examining physician controverting the claimant's treating specialist, an ALJ may reject the opinion of the treating physician *only* if the ALJ performs a detailed analysis of the treating physician's views under the criteria set forth in 20 C.F.R. §§ 404.1527(d)(2)." *Newton*, 409 F.3d at 453. The Fifth Circuit summarized those criteria the ALJ must consider as follows:

> (1) the physician's length of treatment of the claimant,
> (2) the physician's frequency of examination,
> (3) the nature and extent of the treatment relationship,
> (4) the support of the physician's opinion afforded by the medical evidence of record,
> (5) the consistency of the opinion with the record as a whole, and
> (6) the specialization of the treating physician.

*Id.* at 456. So long as the ALJ explains his reasons for declining to give a treating physician's opinion controlling weight, the ALJ's decision will not be reversed for a failure to perfectly conform with formalistic rules in articulating his decision. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994).

According to the medical records, plaintiff was officially diagnosed with fibromyalgia in March 2003 by Dr. Carlos Plata, M.D. (Tr. 249). Dr. Plata initially diagnosed plaintiff with the disease in February 2003; at that time, however, plaintiff had "completely normal ROM [range of motion] throughout with just minimal pain to palpation of the feet and hands . . . [and] no significant synovitis.[4]" (Tr. 251). Likewise, at plaintiff's March 13, 2003, visit with Dr. Plata,

---

[3] However, a treating physician's opinion as to whether a claimant is disabled is not considered a medical opinion, and, therefore, is not entitled to controlling weight. 20 C.F.R. §§ 404.1527(e), 416.927(e).

[4] Synovitis is defined as an "inflammation of a synovial membrane. It is usually painful, particularly on motion, and is characterized by a fluctuating swelling due to effusion within a synovial sac." *Dorland's Medical Dictionary* 1645 (28th ed. 1997).

there was no evidence of significant synovitis. (Tr. 249). At her May 15, 2003 visit, plaintiff continued to maintain a normal range of motion and show normal strength on all of her reflexes. (Tr. 248). Although Dr. Plata noted that plaintiff's fibromyalgia seemed to be worsening, he also noted that such worsening could have been caused by plaintiff's sleep disturbance due to sinusitis. (*Id.*). After a follow-up visit on July 17, 2003, Dr. Plata again noted that plaintiff showed no significant synovitis and continued to maintain a normal range of motion. (Tr. 246). Dr. Plata's impression after the visit was that plaintiff's fibromyalgia "was well controlled last time she was seen before she got infected. It seems that the *pain* is somewhat worse right now but *it does not seem to be very severe* and it seems to be better controlled." (*Id.*).

Dr. Constantine Saadeh, M.D., began treating plaintiff in January 2003. (Tr. 288). At the initial exam on January 17, 2003, plaintiff had some swelling in both hands and tenderness in her right wrist, but maintained a full range of motion in all joints. (Tr. 288). A June 5, 2003, sonogram of plaintiff's hands revealed inflammation in her left hand. (Tr. 287). After a June 28, 2003, x-ray of plaintiff's hands, Dr. Saadeh concluded, "The findings are benign with possible early inflammatory arthropathy." (Tr. 284). On September 23, 2003, plaintiff had a follow-up exam with Dr. Saadeh. In the examination notes, Dr. Saadeh stated that plaintiff's extremities were symmetrical, and plaintiff maintained a full range of motion with equal tone and strength in all extremities. Dr. Saadeh noted mild tenderness and swelling in plaintiff's hands. As in all of her examinations, plaintiff was alert and oriented with no sensory or motor function impairments. (Tr. 277). Ultrasounds and x-rays of plaintiff's hands, knees, feet, and ankles showed only mild to moderate degenerative changes. (Tr. 276). Ultimately, Dr. Saadeh diagnosed plaintiff with rheumatoid arthritis and placed plaintiff on Methotrexate and Remicade for treatment. (Tr. 272, 275, 277).

On February 18, 2004, plaintiff had another follow-up exam with Dr. Saadeh. Again, plaintiff maintained a full range of motion in her extremities and demonstrated no evidence of cyanosis, edema, joint tenderness, or effusion, although plaintiff did have some swelling and mild tenderness in her hands. (Tr. 266). Plaintiff was alert and oriented, and all of her sensory and motor functions were intact. (*Id.*). Plaintiff continued on injections of Remicade through at least July 2004. (Tr. 355, 356, 358, 362, 368).

While plaintiff's application for disability benefits was still pending, Dr. Saadeh filled out two separate disability forms. In the first form, dated July 8, 2004, Dr. Saadeh stated plaintiff was unable to work, primarily due to her rheumatoid arthritis, with anemia and fibromyalgia being secondary disabling impairments. (Tr. 354). Dr. Saadeh did not cite to any specific clinical findings or objective tests to support his opinion plaintiff was permanently disabled. In the second form, dated September 20, 2004, Dr. Saadeh concluded that plaintiff was very limited in her ability to carry out most work-related functions.[5] (Tr. 251-353). Again, Dr. Saadeh did not point to any specific objective criteria upon which he based his determination; instead, he cited plaintiff's impairments generally.

In his decision, the ALJ made the following evaluation based upon the medical evidence:

> It is noted that in September 2004, the claimant's treating doctor reported that the claimant is unable to work, and assessed the claimant as physically capable of lifting and carrying no more than ten pounds at a time, and totally limited from many basic work related activities. . . . This report, however, can not be provided probative weight because it is not supported by any objective clinical findings such as documented lifting and carrying maneuvers or any other measured clinical tests or examinations; and the report exceeds the treating doctor's area of expertise, i.e., the treating doctor is not a vocational expert and did not provide any evident consideration to

---

[5]Interestingly, one of his bases for stating plaintiff was severely limited was diminished range of motion. Such a statement is completely unsupported by any of the medical evidence in the record, including Dr. Saadeh's own treatment notes.

> vocational factors such as the range of ability the claimant retains despite her impairments, the claimant's age, education, or past relevant work.
>
> . . . .
>
> In rendering this decision I considered the claimant's subjective complaints in assessing and evaluating her residual functional capacity for work in compliance with 20 C.F.R. § 404.1529, § 416.929, and Social Security Ruling 96-7p. It is recognized that the claimant has experienced some severe diminishment of her overall functional capability due to hands, legs, and feet [sic] medically determinable impairment. However, it is also recognized that the severity of the claimant's combination of impairment is not incompatible with the performance of certain levels of sustained work activity. . . . [B]ased on all the evidence I conclude that the claimant retains the residual functional capacity sufficient to perform the vocational demands of sedentary work activity.

(Tr. 22). The ALJ clearly weighed Dr. Saadeh's opinion, and even incorporated, somewhat, Dr. Saadeh's opinion as to plaintiff's exertional limitations, and stated his reasons for not fully incorporating Dr. Saadeh's opinion. The reasons given are supported by the record. Dr. Saadeh did not cite to any objective criteria in his disability statements, and in fact, contradicted his own treatment notes to an extent by stating plaintiff suffered from diminished range of motion and severe impairments, when all of the objective tests indicated only mild to moderate degenerative changes and no diminishment in range of motion. Furthermore, because the determination of disability is an issue reserved to the Commissioner, the ALJ did not err by failing to adopt Dr. Saadeh's opinion that plaintiff was totally disabled. *See Newton*, 209 F.3d at 456.

The ALJ considered plaintiff's subjective complaints, but ultimately found them to be not substantially credible in light of the medical evidence because the evidence did not show plaintiff was precluded from engaging in *all* forms of work activity, as she alleged. Because the ALJ properly considered all of the evidence, and because ALJ's RFC determination—that

plaintiff retained an RFC for sedentary work[6]—is supported by substantial evidence, it must be affirmed.[7]

V.
RECOMMENDATION

THEREFORE, for all of the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the defendant Commissioner finding plaintiff not disabled and not entitled to a period of disability benefits be AFFIRMED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 8th day of September 2008.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the

---

[6]"Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." 20 C.F.R. § 404.1567(a).

[7]Plaintiff has made no allegations concerning the ALJ's use of the Grids; therefore, the ALJ's use of the Grids is not addressed. However, the Court does note that the Grids would direct a finding of "not disabled" for a younger individual, aged 18-44, with a high school education and an RFC for sedentary work. *See* Medical-Vocational Rule 201.27.

event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).